when he was before the trial court. The fact that the State conceded error is irrelevant as I see none. I would affirm.

2015 VT 58

## In re K.R.

[121 A.3d 1207]

No. 13-407

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morris, Supr. J. (Ret.), Specially Assigned**

Opinion Filed April 10, 2015

*Nicholas L. Hadden,* St. Albans, for Petitioner-Appellant.

*William H. Sorrell,* Attorney General, Montpelier, and *Martha E. Csala,* Assistant Attorney General, Waterbury, for Respondent-Appellee.

¶ 1. **Skoglund, J.** In February 2004, the Department for Children and Families (DCF) determined that petitioner K.R. placed her son T.F. at risk of harm, and it included her name on the Child Protection Registry. In 2011, an independent administrative reviewer accepted the substantiation, and the Human Services Board upheld this decision. Petitioner now appeals to this Court. We reverse.

¶ 2. At the time of the substantiation, petitioner was twenty-two years old and shared custody of T.F., then age four, with T.F.'s father. Seven years after she was substantiated, petitioner requested an administrative review of DCF's decision. See 33 V.S.A. § 4916a(j) (allowing "[p]ersons whose names were placed on the Registry on or after January 1, 1992 but prior to September 1, 2007 . . . to seek an administrative review to challenge the substantiation"). In August 2011, following an administrative review conference, the administrative reviewer accepted the substantiation. See *id.* § 4916a(c)-(h) (explaining that independent and neutral arbiter conducts review conference during which petitioner can present evidence to support her position and to assist reviewer in making most accurate decision regarding allegation, and DCF bears burden of proving that it has accurately and reliably concluded that reasonable person would believe that child has been abused or neglected by that person). Petitioner appealed the administrative reviewer's decision to the Human Services Board. See *id.* §§ 4916a(i) (allowing for such appeal), 4916b(a) (same).

¶ 3. The Board considered the matter de novo, and after a hearing, it upheld the substantiation decision. It made the following findings. In late August 2003, an emergency-room nurse reported to DCF that petitioner had suffered a drug overdose involving heroin, Flexeril, and Valium.[1] Petitioner admitted to the overdose. She stated that she was trying to "detoxify herself from Oxycontin" by using Flexeril and Valium, and that she had also used heroin on the evening in question. Petitioner's son was not in her care at the time of the overdose.

---

[1] Prior to the hearing, petitioner objected to the admission of the report made by the emergency room nurse. The Board rejected petitioner's argument, finding that the nurse was a mandatory reporter pursuant to 33 V.S.A. § 4913. The Board also rejected petitioner's request to exclude the case log kept by the DCF social worker at the time of her investigation.

¶ 4. Several weeks later, DCF received an anonymous report alleging that petitioner was using drugs in T.F.'s presence.[2] In mid-September 2003, DCF assigned an investigative social worker to petitioner's case. DCF was concerned that petitioner had a drug problem and was using drugs while with T.F. The social worker saw T.F. on or about September 16, 2003 and found that he was developmentally on target, active, and appeared well cared for. During a September 2003 unannounced visit to petitioner's home, the social worker found petitioner's home well-kept, with no evidence of drug paraphernalia.

¶ 5. The social worker informed petitioner numerous times, beginning in September 2003, that DCF was concerned about the impact of petitioner's drug use on T.F. and that it wanted petitioner to obtain a drug evaluation and follow any recommended treatment; take random urine tests to document that she was drug-free; stop using drugs and alcohol; and keep any drug paraphernalia away from T.F. The social worker repeated these recommendations to petitioner at a meeting in mid-October 2003. At this meeting, the social worker learned that petitioner had an appointment with a substance-abuse counselor at the local mental-health agency for an evaluation. The social worker informed petitioner that DCF wanted a copy of the evaluation, and she warned petitioner that she would be substantiated for posing a risk of harm to T.F. if she did not follow through with DCF's recommendations.[3] The social worker met with petitioner again in November 2003 to discuss the steps petitioner needed to take, and

---

[2] DCF states in its brief that the individual who called in the second report was not in fact anonymous, as he identified himself to the DCF intake worker.

[3] The Board found that petitioner saw E.F., a mental-health counselor, for a substance-abuse evaluation in October 2003. She signed a limited release form consenting to the disclosure of information concerning her presence and progress in therapy. Following the evaluation, E.F. sent a letter to the DCF social worker and enclosed a copy of his psychosocial evaluation of petitioner. This evaluation included treatment recommendations. In November 2003, he faxed additional materials to the social worker, which were records from 1999 and 2000. Petitioner moved to exclude all of the information provided by E.F. at the hearing before the Board. The Board granted her request. It found that petitioner had signed only a limited release allowing for the disclosure of her "presence and progress in therapy" for the purpose of "coordination of services." The authorization specifically prohibited redisclosure of the information. The Board determined that E.F. had provided significantly more information to DCF than allowed under the release, and that petitioner had not expressly waived the confidentiality of the records that were released.

to reiterate the warning about possible substantiation. The parties met again in January 2004 due to concerns that petitioner was not following through with DCF's recommendations, including counseling and drug screening. In a February 2004 letter, the social worker informed petitioner that she was being substantiated for posing a risk of harm to T.F.

¶ 6. In its 2011 review, the Board found the social worker's testimony credible in setting out DCF's history with petitioner, DCF's concerns about petitioner's drug use, and the reasons for the substantiation. The social worker also kept contemporaneous case notes detailing the history of her interactions with petitioner, which the Board found corroborated her testimony.

¶ 7. While petitioner admitted at the hearing that she had overdosed in August 2003, she disputed admitting to the administrative reviewer in 2011 that she had used Oxycontin daily in 2003 and 2004. Petitioner maintained that she had used the drug only when T.F. was not in her care. Petitioner acknowledged that she might have said that she used heroin daily but indicated that she only experimented with heroin for one month. Petitioner testified that, after the overdose, she was able to stop using Oxycontin and heroin. She testified that she continued to need treatment for substance abuse. The Board found that, at the time of its decision, petitioner was in treatment for her opioid addiction and that she had been in treatment for several years.

¶ 8. Petitioner stated at the hearing that she did not remember the social worker telling her that DCF wanted a copy of a drug evaluation or informing her of the steps that DCF wanted her to take. She did not remember being asked for urinanalysis results or being told that DCF would substantiate her for risk of harm if she did not follow through with DCF's recommendations. Petitioner testified that she sought other drug treatment and testing during the time in question but that she did not know she should share this information with the social worker. Petitioner stated that she also went to the Brattleboro Retreat at some point. She indicated that a doctor from the Brattleboro Retreat sent a letter to the administrative reviewer about her treatment. This letter did not state that petitioner was at the Brattleboro Retreat during 2003 or 2004, however, but indicated that petitioner had been in treatment for opioid dependency since July 25, 2006.

¶ 9. The Board did not credit petitioner's testimony at the hearing that, when addicted, she limited her drug use to times when T.F. was not with her. It also found that petitioner minimized her responsibilities during DCF's investigation. It noted that the registry reviewer who performed the substantiation review in petitioner's case testified that petitioner admitted to daily Oxycontin use during the time in question. The reviewer stated that she asked petitioner if she used drugs around T.F. and petitioner replied that she did, but that she was able to care for T.F.

¶ 10. Based on these findings, the Board affirmed DCF's decision to substantiate petitioner for placing her child at risk of harm. It explained that DCF was required by law to investigate reports of child abuse and to maintain a record of all investigations that resulted in a "substantiated report." 33 V.S.A. § 4916 (a)(1). A "substantiated report" is one that DCF determines, after investigation, is "based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected." *Id.* § 4912(16). As relevant here, an "abused or neglected child" is one "whose physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent or other person responsible for the child's welfare." *Id.* § 4912(1). "Risk of harm" means "a significant danger that a child will suffer serious harm other than by accidental means, which harm would be likely to cause physical injury, neglect, emotional maltreatment, or sexual abuse." *Id.* § 4912(14). These provisions have not been modified since 2004, when petitioner was substantiated.

¶ 11. Petitioner argued to the Board that DCF failed to meet its burden of proof. She asserted that any information regarding her interactions with DCF after the overdose were irrelevant pursuant to Vermont case law. She stated that she did not place T.F. at risk of harm because he was not in her care on the day that she overdosed.

¶ 12. The Board rejected petitioner's contentions and found that petitioner's case had been opened not because of the overdose, but because of DCF's concerns about petitioner's underlying drug problem. The Board acknowledged ambiguities in the written record about the basis of the substantiation, but found that the ambiguities owed more to sloppiness by DCF in its substantiation

letter than to DCF's oral and written directives during the investigation.

¶ 13. In reaching its decision, the Board stated that it need not take judicial notice of nor make specific findings regarding the effects of daily use of Oxycontin. Cf. *In re L.M.*, 2014 VT 17, ¶ 30, 195 Vt. 637, 93 A.3d 553 (holding that factfinder could reasonably conclude that father's drug addiction posed risk of harm to toddler's well-being as it diminished father's ability to provide adequate supervision, and observing that "[t]he adverse impacts upon a child resulting from the drug addiction of the child's care-giver hardly needs explanation" (quotation omitted)). The Board found the issue before it was whether the totality of the circumstances, including petitioner's admitted daily use of Oxycontin, supported DCF's decision that T.F. was at risk of harm as defined by the statute. Further, it found that petitioner failed to provide DCF with any verification in the weeks and months following her overdose of being in a drug-treatment program or of submitting to drug testing. The Board concluded that a preponderance of the evidence supported DCF's determination that there was "significant danger" that petitioner's child would suffer "harm" in the likely form of "neglect" or "emotional maltreatment" as defined by 33 V.S.A. § 4912(6). The Board thus affirmed DCF's decision. This appeal followed.

¶ 14. Petitioner first argues that the *hearing officer* impermissibly found that "the Board can take notice of information documenting the effects on those using Oxycontin including impaired judgment," and that those effects "can compromise a person's ability to parent resulting in placing a child at risk of harm." She maintains that the mere use of illegally obtained regulated drugs cannot be a per se ground for substantiation.

¶ 15. The only order on appeal is that issued by the Board, and the Board expressly declined to adopt the finding that petitioner challenges on appeal. The Board did not rely on a per se rule, and petitioner does not appear to argue otherwise. As set forth above, the Board looked to the totality of the circumstances in reaching its conclusion.

¶ 16. ■ We cannot find, however, that the Board's findings support its decision. The Board's findings show that, as of 2004, DCF possessed the following information: petitioner had suffered an overdose while T.F. was not in her care; an unattributed report

had been made that petitioner was using drugs in T.F.'s presence; and petitioner refused to provide DCF with proof that she had obtained a substance-abuse evaluation or provide urinalysis. DCF also had information that petitioner's home was well-kept, with no evidence of drug paraphernalia, and that T.F. appeared to be developmentally on target, active, and well-cared-for. DCF did not substantiate petitioner based on her overdose, and we cannot conclude that the anonymous report alone can support the substantiation. While this report provided the impetus for DCF's investigation, it is not in itself sufficiently reliable to show that T.F. was placed at risk of harm.

¶ 17. The Board also found that petitioner admitted during the administrative review process in 2011 that she used drugs daily and that she believed that she could care for T.F. despite her drug use. While petitioner may have admitted this to the reviewer in 2011, DCF did not possess this information at the time of its February 2004 substantiation decision. Similarly, while petitioner admitted at the Board hearing that she was using drugs during the time in question, this information was not before DCF at the time of the substantiation.

¶ 18. ■■ ■■ We recognize that the law specifically allows the reviewer to consider additional evidence secured during the review process. See 33 V.S.A. § 4916a(c)-(h) (explaining that independent and neutral arbiter conducts review conference during which petitioner can present evidence to support her position and to assist reviewer in making most accurate decision regarding allegation, and DCF bears burden of proving that it has accurately and reliably concluded that reasonable person would believe that child has been abused or neglected by that person). The reviewer, and the Board at a fair hearing, are free to consider evidence undermining or supporting the substantiation decision that was not considered at the time of the substantiation. However, after-acquired evidence cannot salvage a substantiation that was not supported by sufficient evidence in the first place. For that reason, the 2004 substantiation determination cannot rest on petitioner's 2011 admissions. Given the significant impact of a substantiation decision on an individual's employment and ability to obtain occupational and other licenses, this conclusion ensures that the State does not exercise its liberty-impairing power to substantiate without an adequate basis, subject to being proven later. We emphasize, however, that after-acquired evidence can always sup-

port a new investigation and substantiation, consistent with the public protection goals of the Child Protection Registry.

¶ 19. All that remains, then, to support the 2004 substantiation is petitioner's refusal to comply with DCF's recommendations. Without any evidence that T.F. was actually at risk, however, petitioner cannot be found to have failed to mitigate a risk to her child by failing to comply with DCF's recommendations. Her refusal to provide DCF with the information it sought, under the circumstances here, does not establish a "significant danger" that T.F. would suffer "harm" as defined by 33 V.S.A. § 4912(6). Thus, while we generally defer to the Board's decision, we must reverse its decision here. See *In re R.H.*, 2010 VT 95, ¶¶ 20-21, 189 Vt. 15, 14 A.3d 267 (explaining that in registry cases, Board "reaches a legal conclusion whether the facts it has found support a reasonable belief that the statutory standard is satisfied," and this Court defers to Board's decision on review). Given our conclusion, we need not address petitioner's remaining arguments challenging the admission of certain evidence.

*Reversed.*

¶ 20. **Reiber, C.J.,** dissenting. In a de novo hearing, the Human Services Board rejected K.R.'s direct challenge to the Department for Children and Families' (DCF) placement of her name on the Child Protection Registry based on a substantiated report of abuse or neglect. In upholding the registry placement, the Board relied upon the totality of the circumstances, including K.R.'s admitted daily use of opioids during the period in question and her failure to follow DCF's recommendations aimed at addressing her substance abuse. Notwithstanding the deferential standard of review we must apply, see *In re R.H.*, 2010 VT 95, ¶ 21, 189 Vt. 15, 14 A.3d 267 (stating that "we defer to the Board's decision regarding substantiation on appeal"), the majority overturns the Board's decision. The majority reaches this result by precluding the Board from relying upon K.R.'s own inculpatory statements made in her direct challenge to the registry placement — even though K.R., neither below nor here on appeal, has ever questioned either the administrative reviewer's or the Board's authority to rely upon these statements or any other evidence. According to the majority, these statements are "after-acquired evidence" unknown to DCF at the time of its initial substantiation determination and thus cannot be used by the Board to "salvage a

substantiation that was not supported by sufficient evidence in the first place." *Ante*, ¶ 18. I cannot accept the majority's position because the Board may, indeed must, consider evidence concerning the accuracy or reliability of a substantiation determination at a de novo hearing in a direct challenge from a registry placement. Accordingly, I respectfully dissent.

¶ 21. The majority appears to lose sight of the fact that the Board's de novo review is from K.R.'s direct challenge to DCF's substantiation determination and resulting placement of her name on the registry. To be sure, there was a significant time gap in this case between DCF's initial placement of K.R.'s name on the registry based on the department's substantiation of abuse or neglect and the later administrative and Board reviews of the substantiation. This is because K.R. took advantage of 33 V.S.A. § 4916a(j), added in 2007, which provides — notwithstanding any other time deadlines in the statute — an opportunity for administrative review of a substantiation decision for persons whose names were placed on the registry between January 1992 and September 2007. Otherwise, a person may request administrative review of DCF's intent to place the person's name on the registry within fourteen days of the date that DCF mailed notice of a right to review its decision to do so. 33 V.S.A. § 4916a(c)(1). DCF must hold an administrative review conference within thirty-five days of receiving that request. *Id.* § 4916a(d). The person may then seek review before the Board within thirty days of the date that the administrative reviewer mails notice of the placement. *Id.* § 4916b(a). The Board must hold a hearing within sixty days of the request and issue a decision within thirty days of the hearing. *Id.* § 4916b(b)(1). Thus, the normal timeframe for a direct appeal of a substantiation decision and registry placement is relatively short.

¶ 22. My point is that we should not be altering the standard of review set forth under our law because of the fact that there was a significant time gap in this case between the initial substantiation decision and the administrative and Board reviews. This appeal does not concern K.R.'s petition for expungement of her name from the registry based on a change of circumstances after her name was placed on the registry.[4] A person seeking

---

[4] In addition to directly appealing the initial substantiation and registry placement under § 4916a(j), K.R. petitioned for expungement. DCF denied the petition, and

expungement is "prohibited from challenging his or her substantiation at the hearing, and the sole issue before the Board" is "whether the Commissioner [of DCF] abused his or her discretion" in denying the petition. *Id.* § 4916c(e); see also *id.* § 4916c(b) (stating that person seeking expungement of placement of name on registry has "burden of proving that a reasonable person would believe that he or she *no longer* presents a risk to the safety or well-being of the children" (emphasis added)); *In re R.H.*, 2010 VT 95, ¶ 23 (stating that, in contrast to challenges of substantiation determinations, "the expungement process specifically allows for an evaluation of a parent's post-incident conduct").

¶ 23. In contrast, in this appeal — notwithstanding the time gap — K.R. is directly appealing the substantiation decision, first to the administrative reviewer, and then in a de novo hearing before the Board. As the majority recognizes, the applicable statute expressly gives the person challenging the initial substantiation decision in the administrative review "the opportunity to present documentary evidence or other information that supports his or her position and provides information to the reviewer in making the most accurate decision regarding the allegation." 33 V.S.A. § 4916a(e). In the administrative review conference, DCF has "the burden of proving that it has accurately and reliably concluded that a reasonable person would believe that the child has been abused or neglected by that person." *Id.*

¶ 24. Thus, the task of the administrative reviewer is to determine the accuracy and reliability of DCF's conclusion that the subject child was abused or neglected — in other words, was harmed or at substantial risk of harm. Nothing in the statute suggests that the reviewer is restricted to considering only evidence previously submitted to or gathered by DCF. Certainly, nothing in the statute precludes the person seeking review from making statements in an administrative review to a "neutral and independent arbiter" with "no prior involvement in the original investigation of the allegation" that the person believes demonstrates the inaccuracy or unreliability of the substantiation report. *Id.* § 4916a(f). To the contrary, as noted, the statute explicitly allows the person requesting the review to present evidence, documentary or testamentary, that he or she believes supports his

on appeal the Board stayed its consideration of the petition pending resolution of the instant matter.

or her position. Moreover, the Board's review of the initial substantiation decision and the administrative review is de novo, *In re R.H.*, 2010 VT 95, ¶¶ 15-19; therefore, "the Board reaches a legal conclusion whether *the facts it has found* support a reasonable belief that the statutory standard is satisfied." *Id.* ¶ 20 (emphasis added). Again, nothing in our law prevented the Board on direct de novo review from considering K.R.'s statements concerning the accuracy and reliability of the substantiation determination.

¶ 25. The majority apparently would impose a different standard of review in situations where new evidence presented to the administrative reviewer or the Board raises doubts about the accuracy or reliability of the initial substantiation decision and thus, unlike this case, actually does support the position of the party seeking review of that decision. Citing the potentially significant impact of having one's name on the Child Protection Registry, the majority holds that the Board may consider new evidence but may not rely on it to support a substantiation that was not supported in the first place. This double standard is inconsistent with our law, as indicated above, and is not warranted based on the potential impact of a registry placement.

¶ 26. The primary purpose of the Child Protection Registry is to protect children against persons whose names are placed on the registry. See 33 V.S.A. § 4911 (stating purposes of subchapter on reporting abuse of children). The Legislature has established registry procedures "that balance[ ] the need to protect children and the potential employment consequences of a registry record for persons who are substantiated for child abuse and neglect." *Id.* § 4911(5). Indeed, the point of providing an opportunity for an independent administrative review and a de novo hearing before the Board is to give the party seeking review an opportunity to demonstrate the inaccuracy or unreliability of the initial substantiation decision. Accuracy and reliability is the goal, whether it means overturning or upholding the initial registry decision. Unless we find a constitutional due process violation — which we have not found here — we should not be doing our own weighing of the consequences of a registry placement and then inserting our own standard of review that is inconsistent with that legislative standard.

¶ 27. For the above reasons, I dissent from the majority's determination that the administrative reviewer and the Board

could not rely upon evidence that was not before DCF when it made its initial substantiation determination. In my view, neither the administrative reviewer nor the Board erred in relying upon K.R.'s own statements made in proceedings on direct review of DCF's initial substantiation decision. I would affirm the Board's discretionary decision to uphold the placement of K.R.'s name on the registry based upon the evidence submitted before the administrative reviewer and the Board, including K.R.'s own incriminating statements, which were sufficient, along with other evidence, to show that her daily drug use and refusal to follow DCF's recommendations to overcome her longstanding substance abuse posed a substantial risk of harm to her child.