2015 VT 58











In re K.R. (2013-407)

 

2015 VT 58

 

[Filed 10-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 58
 
 


 


 
 
 No. 2013-407
 
 


 


 
 
 In re K.R.
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
  
 
 
 Human Services Board
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 October Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
 Charles
 Gingo, Chair
 
 
 
 
  
 
 


Nicholas L. Hadden, St. Albans, for Petitioner-Appellant.

 

William H. Sorrell, Attorney General, Montpelier, and Martha
E. Csala, Assistant Attorney

  General, Waterbury, for Respondent-Appellee.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Morris, Supr. J. (Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
SKOGLUND, J.   In February 2004, the Department for
Children and Families (DCF) determined that petitioner K.R. placed her son T.F.
at risk of harm, and it included her name on the Child Protection
Registry.  In 2011, an independent administrative reviewer accepted the
substantiation, and the Human Services Board upheld this decision. 
Petitioner now appeals to this Court.  We reverse.  

¶ 2.            
At the time of the substantiation, petitioner was twenty-two years old
and shared custody of T.F., then age four, with T.F.’s father.  Seven
years after she was substantiated, petitioner requested an administrative
review of DCF’s decision.  See 33 V.S.A. § 4916a(j) (allowing
“[p]ersons whose names were placed on the Registry on or after January 1, 1992
but prior to September 1, 2007 . . . to seek an administrative review to
challenge the substantiation”).  In August 2011, following an administrative
review conference, the administrative reviewer accepted the
substantiation.  See id. § 4916a(c)-(h) (explaining that
independent and neutral arbiter conducts review conference during which
petitioner can present evidence to support her position and to assist reviewer
in making most accurate decision regarding allegation, and DCF bears burden of
proving that it has accurately and reliably concluded that reasonable person
would believe that child has been abused or neglected by that person). 
Petitioner appealed the administrative reviewer’s decision to the Human
Services Board.  See id. §§ 4916a(i) (allowing for such
appeal), 4916b(a) (same).  

¶ 3.            
The Board considered the matter de novo, and after a hearing, it upheld
the substantiation decision.  It made the following findings.  In
late August 2003, an emergency-room nurse reported to DCF that petitioner had
suffered a drug overdose involving heroin, Flexeril, and Valium.[1]  Petitioner admitted to the
overdose.  She stated that she was trying to “detoxify herself from
Oxycontin” by using Flexeril and Valium, and that she had also used heroin on
the evening in question.  Petitioner’s son was not in her care at the time
of the overdose.  

¶ 4.            
Several weeks later, DCF received an anonymous report alleging that
petitioner was using drugs in T.F.’s presence.[2]  In mid-September 2003, DCF assigned
an investigative social worker to petitioner’s case.  DCF was concerned
that petitioner had a drug problem and was using drugs while with T.F. 
The social worker saw T.F. on or about September 16, 2003 and found that he was
developmentally on target, active, and appeared well cared for.  During a
September 2003 unannounced visit to petitioner’s home, the social worker found
petitioner’s home well-kept, with no evidence of drug paraphernalia.

¶ 5.            
The social worker informed petitioner numerous times, beginning in
September 2003, that DCF was concerned about the impact of petitioner’s drug
use on T.F. and that it wanted petitioner to obtain a drug evaluation and
follow any recommended treatment; take random urine tests to document that she
was drug-free; stop using drugs and alcohol; and keep any drug paraphernalia
away from T.F.  The social worker repeated these recommendations to
petitioner at a meeting in mid-October 2003.  At this meeting, the social
worker learned that petitioner had an appointment with a substance-abuse
counselor at the local mental-health agency for an evaluation.  The social
worker informed petitioner that DCF wanted a copy of the evaluation, and she
warned petitioner that she would be substantiated for posing a risk of harm to
T.F. if she did not follow through with DCF’s recommendations.[3]  The social worker met with
petitioner again in November 2003 to discuss the steps petitioner needed to
take, and to reiterate the warning about possible substantiation.  The
parties met again in January 2004 due to concerns that petitioner was not
following through with DCF’s recommendations, including counseling and drug
screening.  In a February 2004 letter, the social worker informed
petitioner that she was being substantiated for posing a risk of harm to
T.F.  

¶ 6.            
In its 2011 review, the Board found the social worker’s testimony
credible in setting out DCF’s history with petitioner, DCF’s concerns about
petitioner’s drug use, and the reasons for the substantiation.  The social
worker also kept contemporaneous case notes detailing the history of her
interactions with petitioner, which the Board found corroborated her testimony.


¶ 7.            
While petitioner admitted at the hearing that she had overdosed in
August 2003, she disputed admitting to the administrative reviewer in 2011 that
she had used Oxycontin daily in 2003 and 2004.  Petitioner maintained that
she had used the drug only when T.F. was not in her care.  Petitioner
acknowledged that she might have said that she used heroin daily but indicated
that she only experimented with heroin for one month.  Petitioner
testified that, after the overdose, she was able to stop using Oxycontin and
heroin.  She testified that she continued to need treatment for substance
abuse.  The Board found that, at the time of its decision, petitioner was
in treatment for her opioid addiction and that she had been in treatment for
several years.  

¶ 8.            
Petitioner stated at the hearing that she did not remember the social worker
telling her that DCF wanted a copy of a drug evaluation or informing her of the
steps that DCF wanted her to take.  She did not remember being asked for
urinanalysis results or being told that DCF would substantiate her for risk of
harm if she did not follow through with DCF’s recommendations.  Petitioner
testified that she sought other drug treatment and testing during the time in
question but that she did not know she should share this information with the
social worker.  Petitioner stated that she also went to the Brattleboro
Retreat at some point.  She indicated that a doctor from the Brattleboro
Retreat sent a letter to the administrative reviewer about her treatment. 
This letter did not state that petitioner was at the Brattleboro Retreat during
2003 or 2004, however, but indicated that petitioner had been in treatment for
opioid dependency since July 25, 2006.  

¶ 9.            
The Board did not credit petitioner’s testimony at the hearing that,
when addicted, she limited her drug use to times when T.F. was not with
her.  It also found that petitioner minimized her responsibilities during
DCF’s investigation.  It noted that the registry reviewer who performed
the substantiation review in petitioner’s case testified that petitioner admitted
to daily Oxycontin use during the time in question.  The reviewer stated
that she asked petitioner if she used drugs around T.F. and petitioner replied
that she did, but that she was able to care for T.F.

¶ 10.        
Based on these findings, the Board affirmed DCF’s decision to
substantiate petitioner for placing her child at risk of harm.  It
explained that DCF was required by law to investigate reports of child abuse
and to maintain a record of all investigations that resulted in a
“substantiated report.”  33 V.S.A. § 4916(a)(1).  A “substantiated
report” is one that DCF determines, after investigation, is “based upon
accurate and reliable information that would lead a reasonable person to
believe that the child has been abused or neglected.”  Id. §
4912(16).  As relevant here, an “abused or neglected child” is one “whose
physical health, psychological growth and development, or welfare is harmed or
is at substantial risk of harm by the acts or omissions of his or her parent or
other person responsible for the child’s welfare.”  Id. §
4912(1).  “Risk of harm” means “a significant danger that a child will
suffer serious harm other than by accidental means, which harm would be likely
to cause physical injury, neglect, emotional maltreatment, or sexual
abuse.”  Id. § 4912(14).  These provisions have not been
modified since 2004, when petitioner was substantiated.  

¶ 11.        
Petitioner argued to the Board that DCF failed to meet its burden of
proof.  She asserted that any information regarding her interactions with
DCF after the overdose were irrelevant pursuant to Vermont case law.  She
stated that she did not place T.F. at risk of harm because he was not in her
care on the day that she overdosed.  

¶ 12.        
The Board rejected petitioner’s contentions and found that petitioner’s
case had been opened not because of the overdose, but because of DCF’s concerns
about petitioner’s underlying drug problem.  The Board acknowledged
ambiguities in the written record about the basis of the substantiation, but
found that the ambiguities owed more to sloppiness by DCF in its substantiation
letter than to DCF’s oral and written directives during the
investigation.  

¶ 13.        
In reaching its decision, the Board stated that it need not take
judicial notice of nor make specific findings regarding the effects of daily
use of Oxycontin.  Cf. In re L.M., 2014 VT 17, ¶ 30, 175 Vt. 637,
93 A.3d 553 (holding that factfinder could reasonably conclude that father’s
drug addiction posed risk of harm to toddler’s well-being as it diminished
father’s ability to provide adequate supervision, and observing that “[t]he
adverse impacts upon a child resulting from the drug addiction of the child’s
care-giver hardly needs explanation” (quotation omitted)).  The Board
found the issue before it was whether the totality of the circumstances,
including petitioner’s admitted daily use of Oxycontin, supported DCF’s
decision that T.F. was at risk of harm as defined by the statute. 
Further, it found that petitioner failed to provide DCF with any verification
in the weeks and months following her overdose of being in a drug-treatment
program or of submitting to drug testing.  The Board concluded that a
preponderance of the evidence supported DCF’s determination that there was
“significant danger” that petitioner’s child would suffer “harm” in the likely
form of “neglect” or “emotional maltreatment” as defined by 33 V.S.A.
§ 4912(6).  The Board thus affirmed DCF’s decision.  This appeal
followed.

¶ 14.        
Petitioner first argues that the hearing officer impermissibly
found that “the Board can take notice of information documenting the effects on
those using Oxycontin including impaired judgment,” and that those effects “can
compromise a person’s ability to parent resulting in placing a child at risk of
harm.”  She maintains that the mere use of illegally obtained regulated
drugs cannot be a per se ground for substantiation.  

¶ 15.        
The only order on appeal is that issued by the Board, and the Board
expressly declined to adopt the finding that petitioner challenges on
appeal.  The Board did not rely on a per se rule, and petitioner does not
appear to argue otherwise.  As set forth above, the Board looked to the
totality of the circumstances in reaching its conclusion.  

¶ 16.        
We cannot find, however, that the Board’s findings support its
decision.  The Board’s findings show that, as of 2004, DCF possessed the
following information: petitioner had suffered an overdose while T.F. was not
in her care; an unattributed report had been made that petitioner was using
drugs in T.F.’s presence; and petitioner refused to provide DCF with proof that
she had obtained a substance-abuse evaluation or provide urinalysis.  DCF
also had information that petitioner’s home was well-kept, with no evidence of
drug paraphernalia, and that T.F. appeared to be developmentally on target,
active, and well-cared-for.  DCF did not substantiate petitioner based on
her overdose, and we cannot conclude that the anonymous report alone can
support the substantiation.  While this report provided the impetus for
DCF’s investigation, it is not in itself sufficiently reliable to show that
T.F. was placed at risk of harm.  

¶ 17.        
The Board also found that petitioner admitted during the administrative
review process in 2011 that she used drugs daily and that she believed that she
could care for T.F. despite her drug use.  While petitioner may have
admitted this to the reviewer in 2011, DCF did not possess this information at
the time of its February 2004 substantiation decision.  Similarly, while
petitioner admitted at the Board hearing that she was using drugs during the
time in question, this information was not before DCF at the time of the
substantiation.  

¶ 18.        
We recognize that the law specifically allows the reviewer to consider
additional evidence secured during the review process.  See 33 V.S.A.
§ 4916a(c)-(h) (explaining that independent and neutral arbiter conducts
review conference during which petitioner can present evidence to support her
position and to assist reviewer in making most accurate decision regarding
allegation, and DCF bears burden of proving that it has accurately and reliably
concluded that reasonable person would believe that child has been abused or
neglected by that person).  The reviewer, and the Board at a fair hearing,
are free to consider evidence undermining or supporting the substantiation
decision that were not considered at the time of the substantiation. 
However, after-acquired evidence cannot salvage a substantiation that was not
supported by sufficient evidence in the first place.  For that reason, the
2004 substantiation determination cannot rest on petitioner’s 2011
admissions.  Given the significant impact of a substantiation decision on
an individual’s employment and ability to obtain occupational and other
licenses, this conclusion ensures that the State does not exercise its
liberty-impairing power to substantiate without an adequate basis, subject to
being proven later.  We emphasize, however, that after-acquired evidence
can always support a new investigation and substantiation, consistent with the
public protection goals of the Child Protection Registry.  

¶ 19.        
All that remains, then, to support the 2004 substantiation is
petitioner’s refusal to comply with DCF’s recommendations.  Without any
evidence that T.F. was actually at risk, however, petitioner cannot be found to
have failed to mitigate a risk to her child by failing to comply with DCF’s
recommendations.  Her refusal to provide DCF with the information it
sought, under the circumstances here, does not establish a “significant danger”
that T.F. would suffer “harm” as defined by 33 V.S.A. § 4912(6).  Thus,
while we generally defer to the Board’s decision, we must reverse its decision
here.  See In re R.H., 2010 VT 95, ¶¶ 20-21, 189 Vt. 15, 14
A.2d 267 (explaining that in registry cases, Board “reaches a legal conclusion
whether the facts it has found support a reasonable belief that the statutory
standard is satisfied,” and this Court defers to Board’s decision on
review).  Given our conclusion, we need not address petitioner’s remaining
arguments challenging the admission of certain evidence.  

Reversed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 

¶ 20.        
REIBER, C.J, dissenting.   In a de novo hearing, the
Human Services Board rejected K.R.’s direct challenge to the Department for
Children and Families’ (DCF) placement of her name on the Child Protection
Registry based on a substantiated report of abuse or neglect.  In
upholding the registry placement, the Board relied upon the totality of the
circumstances, including K.R.’s admitted daily use of opioids during the period
in question and her failure to follow DCF’s recommendations aimed at addressing
her substance abuse.  Notwithstanding the deferential standard of review
we must apply, see In re R.H., 2010 VT 95, ¶ 21, 189 Vt. 15, 14
A.3d 267 (stating that “we defer to the Board’s decision regarding
substantiation on appeal”), the majority overturns the Board’s decision. 
The majority reaches this result by precluding the Board from relying upon
K.R.’s own inculpatory statements made in her direct challenge to the registry
placement—even though K.R., neither below nor here on appeal, has ever
questioned either the administrative reviewer’s or the Board’s authority to
rely upon these statements or any other evidence.  According to the
majority, these statements are “after-acquired evidence” unknown to DCF at the
time of its initial substantiation determination and thus cannot be used by the
Board to “salvage a substantiation that was not supported by sufficient
evidence in the first place.”  Ante, ¶ 18.  I cannot
accept the majority’s position because the Board may, indeed must, consider
evidence concerning the accuracy or reliability of a substantiation
determination at a de novo hearing in a direct challenge from a registry
placement.  Accordingly, I respectfully dissent.

¶ 21.        
The majority appears to lose sight of the fact that the Board’s de novo
review is from K.R.’s direct challenge to DCF’s substantiation determination
and resulting placement of her name on the registry.  To be sure, there
was a significant time gap in this case between DCF’s initial placement of
K.R.’s name on the registry based on the department’s substantiation of abuse
or neglect and the later administrative and Board reviews of the
substantiation.  This is because K.R. took advantage of 33 V.S.A.
§ 4916a(j), added in 2007, which provides—notwithstanding any other time
deadlines in the statute—an opportunity for administrative review of a
substantiation decision for persons whose names were placed on the registry
between January 1992 and September 2007.  Otherwise, a person may request
administrative review of DCF’s intent to place the person’s name on the
registry within fourteen days of the date that DCF mailed notice of a right to
review its decision to do so.  33 V.S.A. § 4916a(c)(1).  DCF
must hold an administrative review conference within thirty-five days of
receiving that request.  Id. § 4916a(d).  The person may then
seek review before the Board within thirty days of the date that the
administrative reviewer mails notice of the placement.  Id.
§ 4916b(a).  The Board must hold a hearing within sixty days of the
request and issue a decision within thirty days of the hearing.  Id.
§ 4916b(b)(1).  Thus, the normal timeframe for a direct appeal of a
substantiation decision and registry placement is relatively short.

¶ 22.        
My point is that we should not be altering the standard of review set
forth under our law because of the fact that there was a significant time gap
in this case between the initial substantiation decision and the administrative
and Board reviews.  This appeal does not concern K.R.’s petition for
expungement of her name from the registry based on a change of circumstances
after her name was placed on the registry.[4]  A person seeking expungement is
“prohibited from challenging his or her substantiation at the hearing, and the
sole issue before the Board” is “whether the Commissioner [of DCF] abused his
or her discretion” in denying the petition.  Id. § 4916c(e);
see also id. § 4916c(b) (stating that person seeking expungement of
placement of name on registry has “burden of proving that a reasonable person
would believe that he or she no longer presents a risk to the safety or
well-being of the children” (emphasis added)); In re R.W., 2010 VT 95,
¶ 23, 189 Vt. 15, 14 A.3d 267 (stating that, in contrast to challenges of
substantiation determinations, “the expungement process specifically allows for
an evaluation of a parent’s post-incident conduct”).

¶ 23.        
In contrast, in this appeal—notwithstanding the time gap—K.R. is
directly appealing the substantiation decision, first to the administrative
reviewer, and then in a de novo hearing before the Board.  As the majority
recognizes, the applicable statute expressly gives the person challenging the
initial substantiation decision in the administrative review “the opportunity
to present documentary evidence or other information that supports his or her
position and provides information to the reviewer in making the most accurate
decision regarding the allegation.”  33 V.S.A. § 4916a(e).  In the
administrative review conference, DCF has “the burden of proving that it
accurately and reliably concluded that a reasonable person would believe that
the child has been abused or neglected by the person.”  Id.

¶ 24.        
Thus, the task of the administrative reviewer is to determine the
accuracy and reliability of DCF’s conclusion that the subject child was abused
or neglected—in other words, was harmed or at substantial risk of harm. 
Nothing in the statute suggests that the reviewer is restricted to considering
only evidence previously submitted to or gathered by DCF.  Certainly,
nothing in the statute precludes the person seeking review from making
statements in an administrative review to a “neutral and independent arbiter”
with “no prior involvement in the original investigation of the allegation”
that the person believes demonstrates the inaccuracy or unreliability of the
substantiation report.  Id. § 4916a(f).  To the contrary,
as noted, the statute explicitly allows the person requesting the review to
present evidence, documentary or testamentary, that he or she believes supports
his or her position.  Moreover, the Board’s review of the initial
substantiation decision and the administrative review is de novo, In re R.H.,
2010 VT 95, ¶¶ 15-19; therefore, “the Board reaches a legal conclusion
whether the facts it has found support a reasonable belief that the
statutory standard is satisfied.”  Id. ¶ 20 (emphasis
added).  Again, nothing in our law prevented the Board on direct de novo
review from considering K.R.’s statements concerning the accuracy and
reliability of the substantiation determination.

¶ 25.        
The majority apparently would impose a different standard of review in
situations where new evidence presented to the administrative reviewer or the
Board raises doubts about the accuracy or reliability of the initial
substantiation decision and thus, unlike this case, actually does support the
position of the party seeking review of that decision.  Citing the
potentially significant impact of having one’s name on the Child Protection
Registry, the majority holds that the Board may consider new evidence but may
not rely on it to support a substantiation that was not supported in the first
place.  This double standard is inconsistent with our law, as indicated
above, and is not warranted based on the potential impact of a registry
placement.

¶ 26.        
The primary purpose of the Child Protection Registry is to protect
children against persons whose names are placed on the registry.  See 33 V.S.A.
§ 4911 (stating purposes of subchapter on reporting abuse of
children).  The Legislature has established registry procedures “that
balance[] the need to protect children and the potential employment
consequences of a registry record for persons who are substantiated for child
abuse and neglect.”  Id. § 4911(5).  Indeed, the point of
providing an opportunity for an independent administrative review and a de novo
hearing before the Board is to give the party seeking review an opportunity to
demonstrate the inaccuracy or unreliability of the initial substantiation
decision.  Accuracy and reliability is the goal, whether it means
overturning or upholding the initial registry decision.  Unless we find a
constitutional due process violation—which we have not found here—we should not
be doing our own weighing of the consequences of a registry placement and then
inserting our own standard of review that is inconsistent with that legislative
standard.

¶ 27.        
For the above reasons, I dissent from the majority’s determination that
the administrative reviewer and the Board could not rely upon evidence that was
not before DCF when it made its initial substantiation determination.  In
my view, neither the administrative reviewer nor the Board erred in relying upon
K.R.’s own statements made in proceedings on direct review of DCF’s initial
substantiation decision.  I would affirm the Board’s discretionary
decision to uphold the placement of K.R.’s name on the registry based upon the
evidence submitted before the administrative reviewer and the Board, including
K.R.’s own incriminating statements, which were sufficient, along with other
evidence, to show that her daily drug use and refusal to follow DCF’s
recommendations to overcome her longstanding substance abuse posed a
substantial risk of harm to her child.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief Justice
 
 


 

 














[1] 
Prior to the hearing, petitioner objected to the admission of the report made
by the emergency room nurse.  The Board rejected petitioner’s argument,
finding that the nurse was a mandatory reporter pursuant to 33 V.S.A. §
4913.  The Board also rejected petitioner’s request to exclude the case
log kept by the DCF social worker at the time of her investigation. 

 





[2] 
DCF states in its brief that the individual who called in the second report was
not in fact anonymous, as he identified himself to the DCF intake worker. 






[3] 
The Board found that petitioner saw E.F., a mental-health counselor, for a
substance-abuse evaluation in October 2003.  She signed a limited release
form consenting to the disclosure of information concerning her presence and
progress in therapy.  Following the evaluation, E.F. sent a letter to the
DCF social worker and enclosed a copy of his psychosocial evaluation of
petitioner.  This evaluation included treatment recommendations.  In
November 2003, he faxed additional materials to the social worker, which were
records from 1999 and 2000.  Petitioner moved to exclude all of the
information provided by E.F. at the hearing before the Board.  The Board
granted her request.  It found that petitioner had signed only a limited
release allowing for the disclosure of her “presence and progress in therapy”
for the purpose of “coordination of services.”  The authorization
specifically prohibited redisclosure of the information.  The Board
determined that E.F. had provided significantly more information to DCF than
allowed under the release, and that petitioner had not expressly waived the
confidentiality of the records that were released.





[4] 
In addition to directly appealing the initial substantiation and registry
placement under § 4916a(j), K.R. petitioned for expungement.  DCF
denied the petition, and on appeal the Board stayed its consideration of the
petition pending resolution of the instant matter.